NATHAN GREENE *et al. vs.* SAMUEL GERTZ.

DECEMBER 16, 1913.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

(1) . *Surface Waters.  ·Trespass.*

In an action for injury to realty requests of the defendant to charge that defendant had the right to change the grade of his land, either the soil itself, or by structures thereon, so as to cause the surface water to flow in a different direction from what it did naturally so long as he did not collect and concentrate it by means of drains or otherwise, and then turn it upon plaintiffs' land in a volume, and (2) that defendant had the right to make the pitch of the roof of any building as was best adapted for the use of such property, and (3) that unless defendant had collected surface water in some considerable quantity upon his premises and then turned same in a concentrated form upon plaintiff's premises in such a manner as to cause damage, he was not liable, was properly refused where the court instructed the jury as to the fact that there was no liability for damage from the natural flow of the water from defendant's land to plaintiff's land, but that if defendant collected water on the roof of his building and precipitated it on the plaintiff's land, or obstructed a drain which would have carried off such water and diverted the water or dirt and ashes upon the land of plaintiff, he was liable.

(2) *Surface Waters.  Damages.*

Request to charge as to compensatory and exemplary damages, was properly refused where the charge of the court sufficiently covered the ground of the request.

(3) *Surface Waters.  Damages.*

Request to charge that plaintiff could not recover any damages, in an action for injury to realty by surface water, after the date of the writ, was properly refused, where there was no evidence as to any act of defendant subsequent to the issuance of the writ and the damages if any arising subsequent thereto, were incidental to, or occasioned by the conduct of or by acts committed by defendant prior to the issuance of the writ.

TRESPASS ON THE CASE for injury to realty. Heard on exceptions of defendant and overruled.

JOHNSON, C. J. This is an action of trespass on the case for injury to realty.

The declaration contains six counts.

The first count alleges that the defendant, on the first day of September, 1910, negligently erected upon his premises at 44 Olney street a certain building or shed, the roof of which, was so constructed as to cause in times of rain storms, large quantities of water to be collected and accumulated upon the same, and to be discharged in large volume in, on, over and upon the premises of the plaintiffs, thereby injuring and damaging the fences, garden and lawn.

The second count alleges that the defendant did wilfully and maliciously, and with intent to injure and damage the plaintiffs, commit the acts complained of in the first count.

The third count alleges that the defendant, on the first day of October, 1911, negligently deposited certain refuse and ashes in a certain drainway about eighteen inches wide, situated contiguous to and abutting upon the premises of the plaintiffs, by reason whereof large quantities of said refuse and ashes become deposited upon the premises of the plaintiffs; that the premises were thereby rendered and ever since have been in a dirty, filthy and unhealthy condition; that the lawn has been destroyed, and the premises greatly depreciated in value.

The fourth count alleges that the defendant did wilfully, maliciously and with intent to injure and damage the plaintiffs, commit the acts complained of in the third count.

In the fifth count it is alleged that a certain storehouse or shed upon the premises of said defendant, was connected by means of certain gutters and pipes with a certain drainway located upon the premises of said defendant, which said gutters, pipes and drainway were constructed for the purpose of carrying off surface, rain and drain water from the premises of the defendant in such a manner as not to

flow upon or in any way injure or damage the premises of the plaintiffs; and that the defendant on October 1st, 1911, negligently deposited or caused to be deposited in the drainway large quantities of refuse and ashes, so that the drainway became choked, blocked and filled up in such manner that in times of rain storms and at such times as the defendant discharged or caused to be discharged water into the drainway the water was collected in large quantities and discharged in large volume upon the premises of the plaintiffs, so that large quantities of refuse and ashes were deposited upon the premises of the plaintiffs, injuring the garden and lawn of the plaintiffs.

The sixth count alleges that the defendant did wilfully and maliciously and with intent to injure and damage the plaintiffs, commit the acts complained of in the fifth count.

The case was tried before Mr. Justice Baker and a jury in January, 1913. The testimony for the plaintiffs showed that in April, 1909, they were the owners of certain premises, situated at numbers 16 and 22 Dingley Court, in the City of Providence, which were contiguous with and abutted upon the premises of the defendant, these two properties being separated by a picket fence three or four feet high. A warehouse was situated about in the middle of the defendant's premises and a foot and a half or two feet from the fence. There was a concaved cement drainway between the warehouse and the fence, which was used to carry off the rain and to drain water from the warehouse and yard of the defendant, the water being discharged upon the defendant's premises; that in the fall of 1911 the defendant erected and constructed on his premises a certain shed, the roof of which was pitched toward the plaintiff's premises and was joined to the rear wall about a foot from the top; that there were no conductor pipes at the ends of this roof to carry off the rain water so that in times of rain storms large quantities of water were collected on this roof and backed up against the wall, part of the water being poured off on to the plaintiff's premises at the Dingley Court end of the

shed and part being poured off at the rear end of the shed. The water which was poured off the end of the shed on the Dingley Court side was turned in a stream upon the front fence and gate of the plaintiffs, and as a result of the continual pouring of water thereon, the fence, gate-posts and gate were rotted, decayed and destroyed; that in the winter time the water would freeze into ice and make it slippery and dangerous for the plaintiffs and others to enter the premises by way of the gate; that the water which was collected on the roof and turned in a stream off the rear end of the shed fell into the drainway above mentioned and was carried off over the defendant's premises; that in January and February of 1912 Mr. Gertz and another man under his command placed large quantities of ashes in this drainway, entirely filling and blocking it. These ashes were piled higher than the tops of the pickets in some places and large quantities of them rolled upon the premises of the plaintiffs. By reason of the filling up of this drainway with refuse and ashes, the water which was poured off the roof of the shed into this drainway was necessarily turned upon the premises of the plaintiffs and carried with it large quantities of the refuse and ashes. The plaintiffs had a flower garden alongside the picket fence which was destroyed by the refuse and ashes which rolled upon and were carried thereon by the water. The plaintiffs' lawn was also greatly injured and damaged by these ashes and because of the continual pressure of this huge pile of refuse and ashes against the fence and the continual pouring of water upon it, the fence was rotted and decayed and finally pushed from its foundation and destroyed.

The defendant also used the shed to wash his horses and wagons in and the dirty water used in these operations was turned into a pipe connecting the shed with the drainway and thence poured up against the ashes and was then turned aside and on to the premises of the plaintiffs.

Plaintiffs also introduced evidence of threats of the defendant to make trouble for the plaintiffs unless they

consented to allow the defendant to turn his warehouse into a barn and keep horses therein. This the plaintiffs had refused to do.

The defendant testified that no water ever ran over the cement drainway; that no water was ever collected on the roof of his shed and turned on to the gate, fence or premises of the plaintiffs; that refuse and ashes were deposited in the drainway, but that they did not roll upon the property of the plaintiffs; that no water was ever discharged from the pipe connecting the shed with the drainway; that Nathan Greene was always making trouble for the defendant, and that the defendant had never threatened to make trouble for the plaintiffs. Testimony was also presented by the defendant to the effect that Nathan Greene pulled the picket fence from its foundation and that it was not pushed from its foundation by the pile of refuse and ashes deposited in the drainway.

The jury, on the seventeenth day of January, 1913, returned a verdict for the plaintiffs in the sum of $400.

The defendant on January 20, 1913, filed a motion for a new trial, alleging that the verdict was against the law and the evidence adduced at the trial; that the verdict was contrary to the evidence and the weight thereof; and that the damages awarded by the jury were excessive. Pending the hearing of this motion Mr. Justice Baker ceased to be a member of the Superior Court and Mr. Presiding Justice Tanner on March 8, 1913, denied the motion for a new trial to which denial the defendant took exception.

In due time the defendant filed a bill of exceptions stating this exception and also exceptions taken by him to the refusal of the court to grant certain requests for instructions to the jury. The truth of these exceptions and the correctness of the transcript of the testimony filed with the bill were established in the Supreme Court and the case is now before this court on the defendant's bill of exceptions.

(1)    The defendant's first, third and fourth exceptions are respectively to the refusal of his first, third and fourth requests to charge, as follows:

1. "That the defendant had the right to change the grade or surface of his property, either the soil itself or by structures thereon so as to cause the surface water to flow in a different direction from what it did naturally, so long as the defendant did not collect and concentrate such water, by means of drains or otherwise, and then turn it upon the plaintiff's land in a volume."

3. "That the defendant had the right to make the pitch of the roof of any building on his land as was best adapted for the use of such property."

4. "That *unless* the defendant has collected surface water in some considerable quantity upon his own premises and then turned the same in a concentrated form upon the plaintiff's premises in such a manner as to cause the plaintiff's damage, the verdict must be for the defendant."

The trial court on pages 122, 124 and 125 of the transcript of evidence charged the jury as follows: "This action has been brought by Nathan Greene and others against the defendant, Samuel Gertz, to recover damages, because as the plaintiffs say, the defendant has illegally collected water on his premises and diverted it beyond its natural flow on to his premises, and that is all the case is about in so far as the question of liability is concerned." . . .

"Some question has been asked here about which way the land lay and if naturally the water wouldn't flow toward the Greene land from the defendant's, but that isn't involved here. It is true that if the water which fell from the Heavens upon the land of the defendant, the slope of the land was such so that without interference with it by the defendant himself some of it would flow off upon the plaintiffs' land, the plaintiffs couldn't recover for that. In an ordinary rain most of it, I suppose, would flow into the land itself, and if the land sloped that way the natural flowage of the water would not be what the plaintiffs complain of. They do not allege it. What they do allege is that the defendant collected water and gathered it on the roof and it ran down the roof in considerable quantities and then ran down and was

precipitated on the plaintiffs' land. If that was the fact and the plaintiffs were injured thereby, then they are entitled to recover in this case. Or if the water being collected on the roofs, was sent off through pipes down into this drain which, without interruption would carry the water off on the land of the defendant, but he obstructed that drain so he diverted the water coming from the drain onto the land of the plaintiffs and they were injured thereby, either by the water or by its carrying dirt and ashes with it, then if they were shown, either of those things would establish the right of the plaintiffs to recover. That is a question of fact, gentlemen, and you have heard the testimony and seen the premises, and can understand the relation of the testimony better than a person who hasn't seen them. You have seen these buildings and roofs and adjacent land, and heard these witnesses testify what is the fact and if the plaintiffs have introduced testimony satisfying you of this collection of water in this place beyond its natural flow so it has been precipitated upon the plaintiffs' land and has injured them, then they are entitled to recover, otherwise not."

Defendant's counsel says in his brief: "The law in this jurisdiction is considered in the case of *Johnson* v. *White*, 26 R. I. 207 (1904). The Judge presiding at said trial charged the jury generally upon the law in the matter, but the defendant submits that perhaps he did not sufficiently charge the jury upon the absolute right of the defendant to build upon his own premises any structure he saw fit, with the roof thereof pitching in any way he saw fit, so long as the defendant did not collect the ordinary rain or surface water, and then discharge it in a considerable volume upon the plaintiffs' premises."

The judge had instructed the jury as to the fact that there was no liability for damage from the natural flow of water from the defendant's land upon the plaintiffs' land, but only for its collection by the defendant and its discharge thereon and then he emphasized this in the last sentence quoted: "You have seen these buildings and roofs

and adjacent land, and heard these witnesses testify what is the fact and if the plaintiffs have introduced testimony satisfying you of this collection of water in this place beyond the natural flow so it has been precipitated upon the plaintiffs' land and has injured them, then they are entitled to recover, otherwise not."

We think these instructions stated the law correctly and with sufficient particularity. Said first, third and fourth exceptions are overruled.

The defendant's second exception is to the refusal of his second request, as follows: "That, if the plaintiffs are entitled to any damages, they are entitled, as far as compensatory damages are concerned, only to such amount of damages as will pay the plaintiffs for the losses actually suffered; and, as far as exemplary damages are concerned, damages of that character can only be awarded in case any acts of the defendant, if injuring the plaintiffs, were done with specific intent to injure the plaintiffs, or under circumstances of wanton insult, outrage and wrong, and did not incidentally occur in the course of the construction of the warehouse or shed."

The court, p. 128, charged the jury as follows: "Ordinary damages are simply compensatory; what in dollars and cents will make an injured person good. But, if in a case of this sort, the person who has done the unlawful thing, has done it with malice and done it in wanton disregard of the rights of the person that was injured, done it to annoy him, to injure him, then the jury if they are satisfied of that, the court doesn't say you must, but the jury have a right to say that a man who does that sort of thing ought, not only to pay damages such as he has caused, but he ought to pay something by way of punishment so he won't do it again, so it will be a punishment to him. That is punitive damages, —an old fashioned expression is smart money. It is done to deter a man who has done such a thing, to discourage him from doing any such thing again. You don't have to separate the damages if you award such damages, but to

group them altogether, and make a finding of what damages you think ought to be awarded."

This instruction sufficiently covered the ground of this request. The exception to the refusal of said second request is overruled.

The defendant's fifth exception is to the refusal of his fifth request, as follows: "That, if the plaintiffs are entitled to recover anything, they are not entitled to recover any damages accruing since the date of issuing the writ in this action April 27th, 1912."

There was no evidence introduced at the trial charging the defendant with the commission of any act subsequent to the issuance of the plaintiffs' writ on April 27, 1912. In fact, all of the evidence introduced at the trial showed that the acts committed by the defendant to the plaintiffs' injury and damage were committed prior to March 1st, 1912, the last being committed in the month of February, 1912. In 13 Cyc. 254, the law is stated as follows: "Whether damages should be assessed only up to the institution of the suit or to the rendition of the verdict, or compensation should also be allowed for injury likely to be occasioned by the wrongful act, depends upon the facts of the particular case; if the damages arising subsequent to the date of the writ are merely incidental to the cause of action, or are so closely connected with it that they would not of themselves, be the basis of a distinct action, and will continue independent of any subsequent wrongful act, they should be assessed up to the time of the verdict, and when certain to accrue, for the future as well; but if the future damages are contingent only, or if damages sustained after the date of the writ do not necessarily arise from the injury complained of, and form the basis of a new cause of action, the assessment should be made up to the date of the writ only."

As there was no evidence charging the defendant with the commission of any act subsequent to the issuance of the plaintiffs' writ and as the testimony dealt only with the acts and conduct of the defendant prior to the issuance of

the writ, and as the damages, if any, arising subsequent to the date of the writ were incidental to or were occasioned by the conduct of or by acts committed by the defendant prior to the issuance of the writ, the trial court did not err in refusing to give the defendant's fifth request for instruction to the jury and the defendant was not prejudiced thereby.  The defendant's fifth exception is overruled.

The sixth, seventh and eighth exceptions are to the denial of the defendant's motion for a new trial, based on the grounds respectively; that the verdict was against the law and the evidence; that the verdict was against the evidence and the weight thereof; and that the damages awarded were excessive.

The court correctly instructed the jury upon the law as to liability, as laid down by this court in *Johnson* v. *White*, 26 R. I. 207, and other cases in this State.

Our examination of the evidence convinces us that it fairly sustains the verdict, both as to liability and damages. The defendant's sixth, seventh and eighth exceptions are overruled.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment for the plaintiff upon the verdict.

*Thomas G. Bradshaw, Gardner, Pirce & Thornley*, for plaintiff.

*William M. P. Bowen*, for defendant.